COMMONWEALTH of Pennsylvania,
Appellee

v.

Bryan Lynn DIXON, Appellant.

Superior Court of Pennsylvania.

Submitted May 29, 2012.
Filed Sept. 7, 2012.

Patrick J. Connors, Media, for appellant.

John J. Whelan, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: MUSMANNO and BOWES, JJ., and McEWEN, P.J.E.

OPINION BY BOWES, J.:

Bryan Lynn Dixon appeals his November 17, 2011 judgment of sentence imposed following entry of a plea of guilty to possession with intent to deliver ("PWID") (marijuana) and possession of drug paraphernalia. The sentencing court applied the two-year mandatory minimum sentence for drug offenses committed within 1,000 feet of a school to Appellant's conduct, which occurred within that radius of a daycare facility. *See* 18 Pa.C.S. § 6317. The Banks Group Daycare "fell squarely" within the definition of "school" approved in *Commonwealth v. Lewis*, 885 A.2d 51 (Pa.Super.2005), according to the sentencing court. After careful review, we vacate Appellant's sentence and remand for resentencing.

On August 4, 2009, at approximately 2:00 p.m., based upon a report of drug trafficking at 1908 West Fourth Street supplied by a confidential informant, City of Chester police officers arrested Appellant shortly after he exited his residence at that address. Officer Marlowe Freemen, who knew Appellant, asked him if he possessed anything that was improper. Appellant admitted that he had marijuana in his pocket. After a pat down search, Appellant was placed under arrest. After being apprised of his *Miranda* rights, Appellant consented to the search of his residence. He thereafter directed the officers to marijuana, bagging materials, and other drug paraphernalia stored there. Appellant's residence was located within 1,000 feet, but not within 250 feet, of the Banks Group Daycare.[1]

---

1. The significance of this distinction is that the two-year mandatory minimum sentence would not apply if the daycare was viewed as a recreational facility or a playground, as the

After litigating an unsuccessful suppression motion, Appellant pled guilty to the aforementioned charges. Prior to sentencing on November 17, 2011, the Commonwealth advised Appellant that it intended to seek the two-year mandatory minimum sentence provided in 18 Pa.C.S. § 6317 for drug offenses occurring within 1,000 feet of a school. The Commonwealth maintained that a daycare facility was indistinguishable from a preschool, and, although not specifically enumerated in the statute, constituted a school within the meaning of the statute.

At sentencing, the following stipulations were placed on the record in lieu of testimony:

ADA: Your Honor, between myself and Mr. Deavor [Defense Counsel], we have arrived at several stipulations. First and foremost, we would stipulate that at the time of this offense there was an institution called the Banks Group Daycare located at 2002 West Fourth Street in the city of Chester at the time of this incident. Is that correct, Mr. Deavor?

Defense Counsel: Correct.

ADA: That that institution was open at the time and that the arrest of the Defendant took place within the 1,000 feet of that institution and he had the drugs on him at that time. Is that correct?

Defense Counsel: That's correct.

ADA: Additionally, Your Honor, counsel is stipulating that the Banks Group Daycare is a state-certified . . .

. . . .

ADA: That it is a—it's state-certified by the Department of Welfare, that there

are children who attend this daycare ages 0 to 13 years, and by 0, I mean infants in months, up to and including 13 years of age, and that the day-to-day activities of this daycare are— include, but are not limited to, age-appropriate learning letters, numbers, writing their name, and appropriate classroom behavior or facility behavior.

The Court: All right.

ADA: Additionally . . .

Defense Counsel: Appropriate behavior, not appropriate classroom behavior.

The Court: All right.

Defense Counsel: Just leave it at that. I don't think there are classrooms at the facility.

ADA: Additionally, Your Honor, I, in exchange for that stipulation, am stipulating that there are not state-certified teachers at the facility and that it is not—if Ms. Robinson were asked, she does not characterize the facility as a preschool.

The Court: But it has to be certified by the state, right?

ADA: It is certified by the state, the Department of Welfare.

N.T., 11/17/11, at 8–10. In summary, Appellant was arrested for possession of marijuana within 1,000 feet of the Banks Group Daycare, a facility certified by the Department of Welfare and attended by children ages 0 to 13 years. There were no state-certified teachers at the facility, and that if its director, Ms. Robinson, were asked, she did not "characterize the facility as a preschool," but the children at the facility engaged in age-based educational activities on a daily basis. *Id.* at 10.

radius of the drug-free zone around such facilities is only 250 feet, in contrast with the zone around a school which has a radius of 1,000 feet. Appellant maintained that a day-

care was more analogous to a recreational facility where children play, rather than a school where children receive instruction.

Based on the evidence and argument presented, the sentencing court held that the daycare was a "school" for purposes of the drug-free school zone statute and the two-year mandatory minimum sentence applied. The court sentenced Appellant to thirty to sixty months incarceration for PWID, and six to twelve months imprisonment on the possession of drug paraphernalia to run concurrent to the other sentence. By stipulation entered December 12, 2011, Appellant's minimum sentence was reduced to twenty-two and one-half months due to his Recidivism Risk Reduction Incentive Act ("RRRI") eligibility.[2]

Appellant timely filed post-sentence motions, which were denied on November 30, 2011, and he appealed to this Court on December 28, 2011. After Appellant complied with the court's order to file a Pa. R.A.P. 1925(b) concise statement of matters complained of on appeal, the trial court issued its opinion and the matter is ripe for our review. Appellant raises one issue for our consideration:

> Whether the Sentencing Court erred when it misapplied 18 Pa.C.S. 6317, 204 Pa.Code 303.10, (the youth/school enhancement) and 61 Pa.C.S. 4505(c)(2), thereby violating Appellant's United States and Pennsylvania constitutional, statutory and common law rights?

Appellant's brief at 4.

■ Application of a mandatory sentencing provision implicates the legality, not the discretionary, aspects of sentencing. *Commonwealth v. Foster*, 609 Pa. 502, 17 A.3d 332 (2011). In reviewing the trial court's interpretation of statutory language, we are mindful of the well-settled rule that "[s]tatutory interpretation implicates a question of law." *Commonwealth v. Gonzalez*, 10 A.3d 1260, 1261–1262 (Pa.Super.2010). Thus, our scope of review is plenary, and our standard of review is *de novo*. *Commonwealth v. Van Aulen*, 952 A.2d 1183, 1184 (Pa.Super.2008).

Appellant argues that the sentencing court erred in applying the two-year mandatory minimum sentence, specifically 18 Pa.C.S. § 6317(b), which is applicable to certain drug offenses committed "within 1000 feet of a public, private, or parochial school or a college or university." He contends that the Banks Group Daycare is not a school within the meaning of § 6317. We agree for the reasons that follow.

■ In determining the meaning of a statute, we are obliged to consider and give effect to the intent of the legislature. Courts may disregard the statutory construction rules only when the application of such rules would result in a construction inconsistent with the manifest purpose of the General Assembly. *Commonwealth v. Marion*, 981 A.2d 230, 242 (Pa.Super.2009). As with all issues involving statutory interpretation, we must refer to the Statutory Construction Act, 1 Pa.C.S. § 1901–1991. Section 1921 provides in pertinent part:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

---

**2.** 61 Pa.C.S. § 4505.

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921.

■ We are also mindful of the premise that "when the legislature adopts a statute it does so with full knowledge of existing statutes relating to the same subject," and that "statutes or parts of statutes that relate to the same persons or things or to the same class of persons or things are to be construed together, if possible." *Commonwealth v. Hansley*, 994 A.2d 1150, 1152–1153 (Pa.Super.2010) (quoting *Hutskow v. Washowich*, 156 Pa. Cmwlth. 655, 628 A.2d 1202, 1207 (1993) and *Casiano v. Casiano*, 815 A.2d 638, 642 (Pa.Super.2002)).

■ We turn to the relevant statute, 18 Pa.C.S. § 6317 of the Crimes Code, which provides in pertinent part:

§ 6317. Drug-free school zones

(a) General rule.—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30) ] ) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, **if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus,** be sentenced to a minimum sentence of at least two years of total. confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. . . .

. . . .

(b) Proof at sentencing.—The provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

18 Pa.C.S. § 6317(a) and (b) (effective August 25, 1997) (emphasis supplied). The burden is on the Commonwealth at the sentencing hearing[3] to prove by a prepon-

---

**3.** Appellant also argues that the Youth/School Enhancement, 204 Pa.Code § 303.10, does not apply. We agree. By its terms, the enhancement only applies to the manufacture,

derance of the evidence that a mandatory minimum sentence is warranted. *Commonwealth v. Mazzetti*, —— Pa. ——, 44 A.3d 58 (2012); *Marion, supra.*

In *Marion*, we considered the rules of statutory construction when analyzing the legislative intent in enacting § 6317, and relied upon this Court's prior holdings in *Commonwealth v. Drummond*, 775 A.2d 849, 857 (Pa.Super.2001) (*en banc*) and *Commonwealth v. Campbell*, 758 A.2d 1231, 1233–34 (Pa.Super.2000), stating that

> by enacting [S]ection 6317, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or ... semiprivate apartment complexes....
>
> It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of [S]ection 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent....

*Drummond, supra* at 856–57 (quoting *Campbell, supra* at 1236–37 (citations and quotation marks omitted)); *Commonwealth v. Williams*, 955 A.2d 386, 390 (Pa.Super.2008).

▮▮▮ The legislature clearly intended to segregate children from drugs where they learn and play and, to promote that policy, it created drug-free zones within a radius of schools, playgrounds, and recreational facilities. The Commonwealth maintains that the term "school" was intended to encompass daycare facilities; it contends that a daycare is synonymous with a preschool "in modern society and usage." Commonwealth's brief at 11.

The Commonwealth has not directed our attention to any statutes where our legislature has equated daycare centers with schools of any type, even preschools. We note that the institutional sexual assault statute, 18 Pa.C.S. § 3124.2,[4] specifically

---

delivery, or possession with intent to manufacture or deliver a controlled substance *"within 1000 feet of the real property on which is located a public or private elementary or secondary school...."* (emphasis supplied). The Commonwealth did not argue that the daycare facility herein was an elementary or secondary school.

4. (a.2) Schools.

(1) Except as provided in sections 3121, 3122.1, 3123, 3124.1 and 3125, a person who is a volunteer or an employee of a school or any other person who has direct contact with a student at a school commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or indecent contact with a student of the school.
    ....

(2) As used in this subsection, the following terms shall have the meanings given to them in this paragraph:
    iii) "School." A public or private school, intermediate unit or area vocational-technical school.
    ....
(a.3) Child care.—Except as provided in sections 3121, 3122.1, 3123, 3124.1 and 3125, a person who is a volunteer or an employee of a center for children commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or indecent contact with a child who is receiving services at the center.
    (b) Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:
    ....

distinguishes between schools and centers for children in its definitions of institutions. The legislature included child daycare centers, group and family daycare homes, boarding homes for children, and other facilities which provide child-care services subject to licensure and approval of the Department of Welfare or a county social services agency in a separate category from schools.

We note further that while the legislature amended § 6317 in 1997 to enumerate additional types of schools entitled to protection, it did not add daycare or childcare facilities to the list. However, when the legislature amended the Controlled Substance, Drug, Device and Cosmetic Act, § 780–113.4 in 2010, it subjected methamphetamine laboratory operators to harsher penalties for operating or dumping waste not only in close proximity to schools and recreational facilities, but nursery schools and daycare facilities as well. That section provides, in pertinent part 780–113.4. Operating a methamphetamine laboratory and illegal dumping of methamphetamine waste

. . . .

(3) A person who violates this subsection commits a felony of the first degree if the chemical reaction occurs **within 1,000 feet of the real property on which is located a public, private or parochial school, a college or universi-ty or a nursery school or daycare center or within 250 feet of the real property on which is located a recreation center or playground.** The person shall also be subject to 18 Pa.C.S. § 1110.

35 P.S. § 780–113.4 (emphasis supplied). This language is virtually identical to that of § 6317's drug-free zone provision, with the addition of nursery schools and daycare centers. By placing these entities within the same category as schools, the legislature evidenced the intent to treat them similarly and afford them the enhanced geographical radius of protection from the physical dangers associated with the manufacture of methamphetamines. Concomitantly, however, the fact that the legislature specifically denoted daycare centers in addition to schools undermines the Commonwealth's argument herein that daycare facilities are schools *per se* for purpose of the drug-free school zone statute. In the two years since the effective date of the amendment to the methamphetamine provision of the Controlled Substance Act, while there have been amendments proposed that would expand the sites of drug-free zones, daycare centers have not been added to the language of 18 Pa.C.S. § 6317.

▮▮▮ As this is a penal statute, we must construe its provisions strictly.[5] *See* 1 Pa.

---

"Center for children."—Includes a child day-care center, group and family day-care home, boarding home for children, a center providing early intervention and drug and alcohol services for children or other facility which provides child-care services which are subject to approval, licensure, registration or certification by the Department of Public Welfare or a county social services agency or which are provided pursuant to a contract with the department or a county social services agency. The term does not include a youth development center, youth forestry camp, State or county juvenile de-tention facility and other licensed residential facility serving children and youth. 18 Pa.C.S. § 3124.2.

5. Our Supreme Court recently reiterated in *Commonwealth v. Wilgus*, —— Pa. ——, 40 A.3d 1201, 1210 (2012), that the rule of lenity has limits:

The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of a statute must be con-

C.S. § 1928; *Commonwealth v. Kunkle*, 817 A.2d 498 (Pa.Super.2003) (18 Pa.C.S. § 6317 is a penal statute and must be strictly construed). The sentencing court concluded that the statute was intended to protect our children where they routinely learn and play and was not intended to be a comprehensive enumeration or a full catalog of those sites. N.T., 11/17/11, at 34–35. We disagree. The drug-free school zone statute unambiguously enumerates those places the legislature intended to protect. "The maxim, *expressio unius est exclusio alterius*, establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.'" *Hansley, supra* at 1157 n. 3 (quoting *Commonwealth v. Ostrosky*, 866 A.2d 423, 430 (Pa.Super.2005)). The General Assembly was more than capable of drafting § 6317 to include daycare or childcare facilities within the enumerated entities. "This Court is without authority to insert a word into a statutory provision where the legislature has failed to supply it." [6] *Key Sav. and Loan Ass'n v. Louis John, Inc.*, 379 Pa.Super. 226, 549 A.2d 988, 991 (1988). *See also Black v. Billy Penn Corporation*, 72 Pa.Cmwlth. 628, 457 A.2d 192, 193 (1983) ("When the letter of a statute is clear and unambiguous, this Court is not free to engraft addi-tional verbiage upon it in a supposed effort to pursue its spirit.").

If the statute was interpreted as reaching every place where children routinely learn and play, virtually every home, yard, neighborhood, street, and woods would constitute a drug-free school zone and any drug offense would fall within the ambit of § 6317. We decline to adopt the trial court's overly-expansive rationale as it derogates the words of the statute. We are mindful, too, that one of the purposes for creating drug-free zones where offenders are subjected to more serious penalties for drug offenses is to deter them from engaging in such activities in proximity to those locations. That goal is not served where the facility is not identifiable as one creating a drug-free zone. Schools, playgrounds, and recreational facilities are readily recognizable as such; daycare facilities, especially in-home centers such as the one herein, are not.[7]

While we have little doubt that the policy considerations underlying § 6317 are equally applicable to childcare facilities, and that those policies would be furthered by including daycare centers within the ambit of the statute, we are constrained to interpret the language of the statute as written by the legislature. We will not disregard the clear words of the statute under the pretext of pursuing its spirit.

---

strued according to their common and approved usage. It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt. Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope. *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (Pa.2001) (citations and footnote omitted).

6. It is the prerogative of the Legislature, as the policy-setting branch, to enact statutes that reflect its policy decisions. *See Commonwealth v. Zortman*, 611 Pa. 22, 23 A.3d 519 (2011); *In re D.L.H.*, 606 Pa. 550, 2 A.3d 505, 515 (2010). Our role is to interpret and construe those statutes to ascertain and effectuate the intention of the Legislature.

7. Defense counsel represented to the sentencing court that he scouted the Banks Group Daycare and that it was "a row home in Chester.... There is no sign out there. There's nothing out there." N.T., 11/17/11, at 21.

For all of the foregoing reasons, we find that the term "school" as used in § 6317 does not encompass a daycare facility.

■ The Commonwealth, however, relies upon *Lewis* for the proposition that a preschool is a school under the statute, and that the Banks Group Daycare is a preschool. In *Lewis,* we approved the dictionary definition of school, namely, that a school is "an institution for the teaching or instruction of children or people under college-age." American Heritage Dictionary (4th ed.) (2000). The Commonwealth asserted below, and again on appeal, that this daycare facility was conducting preschool activities much like the preschool in *Lewis.* Appellant counters that in *Lewis,* the court specifically distinguished a daycare center from a preschool in arriving at its holding, and that under the rules of statutory construction, the clear language of the statute should not be disregarded in favor of the legislative intent. In *Lewis,* the facility in question, a church, specifically had a preschool and conducted religious education classes on the premises.

The trial court held that the Banks Group Daycare's educational activities, in conjunction with our broad interpretation of § 6317 language, rendered the daycare center a school. We cannot agree with the court's conclusion. It was undisputed in *Lewis* that there was a preschool located within a church. The issue therein was whether a preschool was a school within the meaning of the drug-free school zone statute. The Commonwealth argued, and this Court agreed, that the "plain and ordinary meaning, as well as the common and accepted usage, of the word 'school' includes pre-schools." *Id.* at 58. Furthermore, the term "school" as used in § 6317 encompassed "an institution for the instruction of children or people under college age." *Lewis, supra* at 58.

The Commonwealth pointed out in *Lewis* that, while § 6317 formerly applied only to elementary and secondary schools, the legislature subsequently amended the language of the statute in 1997 to include all public, private, and parochial schools and colleges and universities, playgrounds, recreation centers, and school buses. The expansion of the statutory language to include additional grade levels of schools, the Commonwealth maintains, evidenced a legislative intent "to broaden the scope of the statute to protect children, regardless of their age, from the evils associated with drug activity." *Id.* at 56. Hence, the church was a school for the purposes of the § 6317 enhancement because it operated a preschool on the premises.

We find *Lewis* distinguishable on its facts. Herein, the Commonwealth failed to establish by a preponderance of the evidence that the Banks Group Daycare was a preschool. The director of the facility does not hold it out as a preschool. There are no certified teachers on staff, and there is no evidence in the record that classes are conducted on the premises. We agree with Appellant's contention that, in contrast to the preschool in *Lewis,* the purpose of the Banks Group Daycare was childcare, not instruction, and that age-appropriate activities involving numbers and letters do not convert a daycare center into a preschool. On these facts, we hold that the court erred in imposing the drug-free school zone's statutory minimum sentence and, accordingly, Appellant's sentence must be vacated.

Judgment of sentence vacated. Case remanded for resentencing with due consideration to Appellant's RRRI eligibility. Jurisdiction relinquished.

President Judge EMERITUS STEPHEN J. MCEWEN, JR. files a Dissenting Statement.

DISSENTING STATEMENT BY McEWEN, P.J.E.:

While the learned author of the lead Opinion has provided a careful analysis and persuasive statement of rationale for reasons in support of the Opinion of the Majority, I proceed with this statement of dissent to advise that I would affirm the judgment of sentence based upon the Opinion of the distinguished trial judge.