J. S71045/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
  :         PENNSYLVANIA
           Appellee   :
  :
           v.   :
  :
  :
ELMER CHARLES GREEN,   :
  :
           Appellant   :     No. 232 MDA 2014

Appeal from the Judgment of Sentence January 7, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division No(s).: CP-21-CR-0000346-2012

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 24, 2014**

Appellant, Elmer Charles Green, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas following a jury trial and his convictions for multiple counts of, *inter alia*, involuntary deviate sexual intercourse[1] ("IDSI") and indecent assault.[2] He challenges, pursuant to ***Alleyne v. United States***, 133 S. Ct. 2151 (2013), the imposition of a mandatory minimum sentence based on his prior

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3123(a).

[2] 18 Pa.C.S. § 3126(a).

conviction for IDSI and asserts the trial court erred by denying his motion to suppress. We affirm.

We adopt the facts set forth by the trial court's opinion. **See** Trial Ct. Op., 4/16/14, at 1-6. On January 7, 2014, the court sentenced Appellant to a mandatory minimum sentence of twenty-five to fifty years' imprisonment because he had a prior IDSI conviction. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues on appeal:

> Did the trial court err when it imposed a 25-year mandatory minimum sentence on count 1—involuntary deviate sexual intercourse?
>
> Did the suppression court err when it denied Appellant's motion to suppress?

Appellant's Brief at 6.

For his first issue, Appellant argues the court violated **Alleyne**, because the fact that he was previously convicted of IDSI should have been submitted to the jury. Accordingly, he suggests the court violated his constitutional rights by imposing the mandatory minimum sentence. For his second issue, Appellant insists that his various mental infirmities should have led the suppression court to suppress the statements he made to the police. We hold Appellant is due no relief.

This Court has stated:

> Application of a mandatory sentencing provision implicates the legality, not the discretionary, aspects of sentencing. In reviewing the trial court's interpretation of

> statutory language, we are mindful of the well-settled rule that statutory interpretation implicates a question of law. Thus, our scope of review is plenary, and our standard of review is *de novo*.

*Commonwealth v. Dixon*, 53 A.3d 839, 842 (Pa. Super. 2012) (punctuation and citations omitted).

*Alleyne* held that facts that increase the mandatory minimum sentence for a crime must be submitted to a jury and found beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2155, 2161, 2163. The High Court noted that "the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* at 2162. *Alleyne* does not require that the fact of a prior conviction be presented at trial and found beyond a reasonable doubt. *Id.* at 2160 n.1 (noting, "In *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), we recognized a narrow exception . . . for the fact of a prior conviction."); *United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013) (noting, "*Alleyne* d[id] nothing to restrict the established exception under *Almendarez–Torres* that allows judges to consider prior convictions."); *Commonwealth v. Watley*, 81 A.3d 108, 117 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014).

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the

> suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> Moreover, it is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa. Super. 2011) (punctuation and citations omitted), *affirmed on other grounds*, 78 A.3d 1044 (Pa. 2013).

In *Commonwealth v. Hughes*, 555 A.2d 1264 (Pa. 1989), a juvenile with schizophrenia and low I.Q. contended his waiver of *Miranda*[3] rights was invalid. *Id.* at 1274. Our Supreme Court disagreed:

> Appellant's low I.Q. does not establish his inability to comprehend his rights. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986) (plurality opinion) (low

---

[3] *Miranda v. Arizona*, 384 U.S. 346 (1966).

- 4 -

> I.Q. does not invalidate confession); ***Commonwealth v. Hernandez***, [446 A.2d 1268 (Pa. 1982)] (sixteen-year-old Hispanic defendant with I.Q. of fifty-seven capable of understanding constitutional rights). Moreover, we have consistently refused to adhere to a *per se* rule of incapacity to waive constitutional rights based on mental disease or deficiency.

***Id.*** at 1275.

After careful consideration of the record, the parties' briefs, and the well-reasoned decision of the Honorable M.L. Elbert, Jr., and the Honorable Kevin A. Hess, we affirm on the basis of the trial court's decisions. ***See*** Trial Ct. Op. at 12 (holding fact of Appellant's prior conviction is not presented to jury); Trial Ct. Op., 5/6/13, at 6 (holding mental infirmities do not *per se* render one unable to waive constitutional rights; Appellant testified he was told he was free to leave; and Appellant's psychologist testified Appellant could understand instructions); ***see also Alleyne***, 133 S. Ct. at 2160 n.1; ***Hughes***, 555 A.2d at 1275. Accordingly, having discerned no error of law or abuse of discretion, we affirm the judgment of sentence. ***See Dixon***, 53 A.3d at 842; ***Baker***, 24 A.3d at 1015.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014

- 5 -

COMMONWEALTH

V.

ELMER CHARLES GREEN
OTN: T123942-0

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: CP-21-CR-346-2012
:
: CHARGE: 1. INVOLUNTARY DEVIATE
: SEXUAL INTERCOURSE; 2. INDECENT
: ASSAULT; 4. INDECENT ASSAULT;
: 5. INVOLUNTARY DEVIATE SEXUAL
: INTERCOURSE
:
: AFFIANT: CPL. KENNETH L. TALLMAN

## IN RE: OPINION PURSUANT TO PA. R.A.P. 1925

Ebert, J., April 16, 2014 –

Elmer Charles Green (hereinafter "Defendant"), was convicted following a jury

trial of the above-captioned offenses. Defendant filed the instant appeal and complains

of the following errors:

1. Mr. Green's pre-trial motion to suppress evidence was improperly denied. Mr. Green's limited mental capabilities affected his ability to understand that he was free to leave the police car where the interrogation occurred.

2. The evidence presented at trial was not sufficient to convict Mr. Green of the above-captioned charges [two counts of involuntary sexual deviate intercourse and two counts of indecent assault].

3. The mandatory 25-year minimum sentence imposed, at Count 1, was improper and illegal. The statute authorizing said sentence, 42 Pa.C.S.A. § 9718.2, is unconstitutional. The statute adds an additional element to the crime that was originally charged; specifically that Mr. Green had certain enumerated prior convictions. This additional fact increased the penalty of the original crime. The additional element of the charged crime, should have been a question for the jury. *See* Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 186 L.Ed.2d 314 (2013).[1]

---

[1] Concise Statement of the Errors Complained of on Appeal, filed Feb. 28, 2014

43

## Procedural History

On August 17, 2012, Defendant filed an Omnibus Pretrial Motion where he sought to suppress inculpatory statements he made to officers. A suppression hearing was held on April 4, 2013. Defendant's motion to suppress these statements was denied on May 3, 2013.

A jury trial was held on July 9 through July 11, 2013. The jury found Defendant guilty beyond a reasonable doubt of two counts of Involuntary Deviate Sexual Intercourse and two counts of Indecent Assault. The jury found Defendant not guilty of Terroristic Threats.

Defendant was sentenced on January 7, 2014. At Count 1, Involuntary Deviate Sexual Intercourse by forcible compulsion, Defendant was sentenced to incarceration of 25 to 50 years and to comply with lifetime Megan's Law registration. This was a standard range mandatory minimum sentence.[2] The remaining Counts 2, 4 and 5 merged with Count 1 for sentencing purposes.[3]

## Statement of Facts

Christopher Coble (hereinafter "Chris") first met Defendant at a bingo hall in Shippensburg, Pennsylvania that he went to with his mother.[4] It must be noted that Chris was 23 years old at the time of the trial and lived with this mother. While Chris graduated from high school, he was always in full time learning support classes. In addition to being described as a "slow" learner, Chris was hit by a drunk driver in 2000 while riding on his bicycle. The injuries he sustained affected his mental capacity.[5]

---

[2] In Re: Sentence, Order of Court, filed Jan 10, 2014
[3] Id.
[4] Notes of Testimony, In Re: Jury Trial – Vol. I, 22, July 9 and 10, 2013, page 22 (hereinafter N.T. ___ )
[5] N.T. 66-68

2

Even though they did not talk much, Chris considered Defendant a close friend.[6] Chris testified that sometime in the summertime of 2011 while at the bingo hall, Defendant asked Chris if he would like to come back to his house.[7] Chris's mother believed the incident occurred on a Saturday in September, but was unable to recall the exact year.[8] Chris believed that Defendant lived with his grandparents at the time, but Defendant actually lived with his aunt and uncle.[9] Chris told Defendant he would come because Defendant told him his father passed away and Chris wanted to support him.[10] Chris and Defendant were driven to where Defendant was living by Defendant's relatives.[11]

Once at the house, Chris stated he looked around both outside and inside the home. Chris went inside and sat on the couch in the living room and Defendant sat on the other side of the couch.[12] Everyone else was upstairs and Chris testified that Defendant was just looking at him and he felt awkward.[13] Chris was tired and asked Defendant for a blanket and fell asleep on the couch.[14]

Chris next recalls waking up around 2:30 a.m. with his pants and underwear down around his ankles.[15] Chris stated that Defendant was touching his genitals with his hands and then Defendant put Chris's genitals in his mouth.[16] During these acts

---

[6] N.T. 22, 23
[7] N.T. 26. There was some confusion about the date of the actual offense. While Chris testified at trial that it occurred in 2011, the offense must have occurred much earlier as Chris waited two years before telling police and his first interview with police was in October of 2011 (N.T. 103). In any case, Defendant is not contesting the statute of limitations in filing these charges, so the actual date of the offense is immaterial.
[8] N.T. 69
[9] N.T. 27, 135
[10] N.T. 27
[11] N.T. 27. Neither Defendant nor Chris has a driver's license
[12] N.T 31-32
[13] N.T. 33
[14] N.T. 33-34
[15] N.T. 34-35
[16] N.T. 36-37

3

Chris stated he "felt so uncomfortable, and [he] felt scared."[17] Chris told Defendant to stop five times, and Defendant eventually stopped.[18] Then Chris described how Defendant got on top of him, with his knees on his chest, and told Chris he would kill him if he said anything.[19] Chris was "tossing and turning with [his] body" to try to get Defendant off of him.[20] Chris told Defendant to get off of him and eventually Defendant complied.[21]

After Defendant moved off of him, Chris testified he pulled his pants up and ran to the bathroom after grabbing the house phone, located in the upstairs hallway.[22] Chris locked himself in the bathroom for the rest of the night and said he "sat on the bathroom floor and cried."[23] Chris was afraid to leave the bathroom because Defendant was outside the door.[24] Chris eventually called his mother to come and pick him up, and around 8:00 a.m. he went outside to wait for her.[25] Chris did not tell his mother what happened when she picked him up because he was scared.[26]

In fact, Chris waited for two years before he finally told a friend and then his mother what happened.[27] When asked why he waited so long to tell someone what happened, Chris stated he was "afraid that [Defendant] was going to come and find me and kill me cause of what he told me".[28] His mother took him to the state police station

---

[17] N.T. 37
[18] N.T. 64-65
[19] N.T. 38
[20] N.T. 38
[21] N.T. 38-39, 65
[22] N.T. 42
[23] N.T. 43
[24] N.T. 44-45
[25] N.T. 46
[26] N.T. 46, 47
[27] N.T. 48, 73
[28] N.T. 49-50

4

after he told her what happened.[29] Chris talked to Corporal Kenneth Tallman and Trooper Benjamin Wilson on October 12, 2011, and told them what happened.[30] Corporal Tallman said that Chris's testimony at trial was consistent with what he told him, although he did not remember Chris mentioning grabbing the telephone and going to the bathroom.[31]

Corporal Tallman made arrangements for a consensual wiretap, during which Chris would call Defendant and get Defendant to talk about the incident.[32] Chris agreed and called Defendant. A recording of the phone call was made and played for the jury.[33] During the consensual wiretap, Chris stated to the Defendant "...you can apologize to me for what you did to me at your grandmother's house. That time I spent the night. Because right now, I've been ..." The Defendant replied "I'm sorry."[34]

Corporal Tallman and Trooper Wilson then talked to Defendant on October 26, 2011.[35] They asked Defendant if he would speak to them in the police car so that the conversation was private. Defendant sat in the front of the police car and the doors were kept unlocked. Defendant was told he was free to leave at any time.[36] During this interview, Defendant admitted to touching Chris's penis the night he stayed over, that Chris told him to stop, and that Defendant continued to do it.[37] When asked why he touched Chris, Defendant replied "because I wanted to do something."[38] Trooper

---

[29] N.T. 73
[30] N.T. 79, 102
[31] N.T. 79
[32] N.T. 81-82
[33] N.T. 81-82, 85; Com. Ex. 1
[34] Com. Ex. 2 – Transcript of recorded interception.
[35] N.T. 88, 103
[36] N.T. 89-91
[37] N.T. 92
[38] N.T. 92

Steven Nesbit arrested Defendant on January 20, 2012.[39] When he arrested him, Defendant was confused as to why it took so long to arrest him when the incident happened so long ago.[40]

Defendant presented testimony from Doctor Wayne Schmoyer, a psychologist, who performed an intellectual disability evaluation on Defendant.[41] Dr. Schmoyer testified that Defendant scored a 65 on the overall IQ test, which places him in the mild mental retardation level.[42] Through other behavioral and developmental testing, Dr. Schmoyer also determined that Defendant is generally placed at the age of eight years and one month for his ability to do things.[43] On the scale for social communication and interaction, Dr. Schmoyer found Defendant to be placed at about six years and five months old.[44] However, Dr. Schmoyer testified that Defendant understood all directions he was given for the testing and was clearly understandable when he spoke.[45]

Defendant testified at trial that on the night of the incident, he went upstairs to sleep in his own room. At some point he was awakened when Chris came into his room.[46] The two then went back downstairs and sat in the living room.[47] Defendant admitted at trial that he put Chris's penis in his mouth and touched it that night while Chris was asleep.[48] Defendant also admitted that Chris woke up and asked him to stop and he did not stop.[49]

---

[39] N.T. 121
[40] N.T. 120
[41] N.T. 124-25
[42] N.T. 125-26
[43] N.T. 127
[44] N.T. 127
[45] N.T. 129-30
[46] N.T. 138
[47] N.T. 140
[48] N.T. 142
[49] N.T. 143

6

## Discussion

## I. Motion to Suppress

The Honorable President Judge Kevin A. Hess issued an opinion denying Defendant's Omnibus Pretrial Motion to suppress the statements the Defendant made to the State Police. This Opinion dated May 3, 2013, will be incorporated herein.

## II. Sufficiency of the Evidence

When reviewing the sufficiency of the evidence, all the evidence and reasonable inferences from that evidence are viewed in the light most favorable to the Commonwealth as verdict winner. Commonwealth v. Wilson, 825 A.2d 710, 713 (Pa. Super. 2003). The jury, as the fact-finder, is free to believe "all, part or none" of the evidence presented to it. Id. at 713 (citing Commonwealth v. Krouse, 799 A.2d 835, 838 (Pa. Super. 2002)). The question of reasonable doubt is also for the fact-finder, "unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn[.]" Id. at 713 (internal citations omitted). It is also "well-established that 'the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" Commonwealth v. Castelhun, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citing Commonwealth v. Bishop, 742 A.2d 178, 189 (Pa. Super. 1990)).

In order to prove IDSI, the Commonwealth must show that a defendant engaged in deviate sexual intercourse with a complainant by forcible compulsion or with a complainant who was unconscious or who was unaware that the sexual intercourse is occurring. 18 Pa.C.S.A. § 3123(1), (3). The defendant must have known the victim was unaware the intercourse was occurring or knew of or recklessly disregarded the victim's unconsciousness. Id. A person recklessly disregards a victim's

7

unconsciousness by consciously disregarding a substantial and unjustifiable risk that the victim is unconscious. *See* 18 Pa.C.S.A. § 302(3). Deviate sexual intercourse is defined as "sexual intercourse per os or per anus between human beings." 18 Pa.C.S.A. § 3101; *see also* Casthehun, 889 A.2d at 1232.

In order to prove indecent assault, the Commonwealth must show that the defendant had indecent contact with the complainant or caused the complainant to have indecent contact with the defendant. 18 Pa.C.S.A. § 3126(a). The defendant must have caused the contact without the complainant's consent, by forcible compulsion, or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. 18 Pa.C.S.A. § 3126(a)(1)-(3). In order to show indecent contact, the Commonwealth must establish that the defendant brought about a touching of the sexual or intimate parts of the body of the complainant for the purpose of arousing or gratifying his own or the complainant's sexual desire. 18 Pa.C.S.A. § 3126(a).

At trial, the Defendant admitted to the jury that he touched Chris's penis and put it in his mouth while Chris was asleep. He also admitted that he did not stop when Chris asked him to. This was entirely consistent with Chris's testimony. While the jury heard that Defendant had developmental issues, the jury also heard that Defendant could understand and follow directions and communicate clearly with others. Additionally, the jury also heard that Chris had developmental issues and was considerably younger than the Defendant. The jury also saw Defendant testify and could evaluate his mental capacity for themselves. Based on Defendant's own testimony, there was more than sufficient evidence for the jury to find Defendant guilty beyond a reasonable doubt of both counts of Involuntary Deviate Sexual Intercourse.

8

There was also sufficient evidence for the jury to find Defendant guilty of the two counts of Indecent Assault. Again, Defendant admitted to touching Chris's genitals. Chris testified that at one point, Defendant pinned him down and threatened him and Chris was unable to get away. Additionally, Defendant told the officers that he did these acts because he "wanted to do something," from which the jury could infer that Defendant performed these acts to arouse or gratify his own sexual desire. There was more than sufficient evidence for the jury to find Defendant guilty of indecent assault by forcible compulsion and with lack of consent.

### III. Mandatory Sentence

Defendant's final error complained of is that this Court erred when it gave Defendant a mandatory minimum sentence of 25 years incarceration based on Defendant's prior criminal conviction. This Court did not err.

Defendant was sentenced to a mandatory minimum of 25 years for Count 1, based on 42 Pa.C.S.A. § 9718.2(a)(1), which calls for a 25 year mandatory minimum sentence when a defendant had been convicted of an offense listed in 42 Pa.C.S.A. § 9799.14 (relating to sex crimes) at the time of the commission of the current offense. As Defendant had such a prior conviction, he was sentenced to the mandatory minimum, or 25 to 50 years' incarceration. Defendant argues that since his prior conviction increased the penalty for the crime, it became an element of the offense and should have been submitted to the jury. Therefore, Defendant argues the sentence enhancement of 42 Pa.C.S.A. § 9718.2(a)(1) is unconstitutional.

Defendant relies on the United States Supreme Court case Alleyne v. United States, __ U.S. __, 133 S. Ct. 2151 (2013). In that case, the Court held that facts that

9

increase a mandatory minimum sentence are elements and must be submitted to the jury and found beyond a reasonable doubt. _Alleyne_, 133 S. Ct. at 2158. The Court stated that "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the _charged offense_." _Id._ at 2158 (internal citations omitted)(emphasis added).

In _Alleyne_, the Court was reviewing 18 U.S.C. § 924(c)(1)(A), which contained a tiered mandatory minimum sentence scheme for those defendants who used or carried a firearm while committing a crime of violence. Under that sentencing system a defendant was given a mandatory minimum of five years if he used or carried a firearm, a minimum of seven years if he "brandished" a firearm, or a minimum of ten years if a firearm was discharged. 18 U.S.C. § 924(c)(1)(A)(i)-(iii), _See also_ _Alleyne_, 133 S. Ct. at 2155-56. The mandatory minimum sentence, therefore, was determined by how the defendant used the firearm _during the commission of the current offense_ and it is clear how that sentencing system can be seen as an element of the charged offense.

_Alleyne_ is distinguishable in this matter, because the sentencing scheme at issue in this case is quite different. The statute at issue here, sentences for sexual offenders, 42 Pa.C.S.A. § 9718.2, states in relevant part:

> Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense _the person had previously been convicted_ of an offense set forth in section 9799.14...be sentenced to a minimum sentence of at least 25 years of total confinement...(emphasis added).

42 Pa.C.S.A. § 9718.2(a)(1). The statute goes on to state that "[t]he provisions of this section _shall not be an element_ of the crime..." 42 Pa.C.S.A. § 9718.2(c)(emphasis

10

added). Whether Defendant had previously been convicted of a sexual offense is therefore not an "element" or "ingredient" of the charged offense. It should not be viewed as an element that needs to be decided by the jury beyond a reasonable doubt. Rather, Defendant's previous conviction for a stated sexual offense is a fact that is either contained within his criminal record or not and should be for the court to determine at sentencing. It should also be noted that a hearing process is available if Defendant contests any prior convictions that led to a mandatory minimum sentence under this section. *See* 42 Pa.C.S.A. § 9718.2(c).

An examination of the Defendant's Cumberland County Probation file reveals the following:

| Date of Sentence | Offense | Sentence | Tier[50] |
|---|---|---|---|
| 12/17/85 | IDSI (F1) (2 counts) 18 Pa.C.S.A. § 3123 | 5 - 10 Years SCI | Tier 3 Offense (d)(4) |
| " | Indecent Assault (M2) (2 counts) 18 Pa.C.S.A. § 3126(a)(1) | | Tier 1 Offense (b)(6) |
| " | Corruption of Minors (M1) 18 Pa.C.S.A. § 6301(a)(1)(ii) | | Tier 1 Offense (b)(8) |
| 10/15/96 | Indecent Assault (M1) 18 Pa.C.S.A. § 3126(a)(7) | 2 - 4 Years SCI | Tier 3 Offense (d)(8) |
| 6/20/00 | Indecent Assault (M2) 18 Pa.C.S.A. § 3126(a)(7) | 2 ½ - 5 Years SCI | Tier 3 Offense (d)(8) |
| " | Corruption of Minors (M1) 18 Pa.C.S.A. § 6301(a)(1)(ii) | | Tier 1 Offense (b)(8) |

---

[50] Tier based on 42 Pa.C.S.A. § 9799.14, Sexual Offenses and Tier System

Based on this record, in reality the Defendant should have been sentenced to a term of life imprisonment under the provisions of 42 Pa.C.S.A. § 9718.2(a)(2). This did not happen because the Notice of Mandatory Sentence served on the Defendant prior to trial only requested the 25 year minimum required by 42 Pa.C.S.A. §9718.2(a)(1).

Here, Defendant's argument is entirely implausible. Defendant is essentially arguing that the jury should have been informed during his trial for serious sexual offenses, that he had previously been convicted of very serious sexual offenses on three separate occasions. This is exactly the type of evidence that is kept from juries so that they do not make any judgments of guilt based on a defendant's prior actions. The sentences for sexual offenders' statute at issue here only deals with findings of previous convictions and is not evidence of the charged offense. A finding of a previous conviction is simply not the type of evidence that must be or should be submitted to a jury. The sentencing structure at issue in this matter is entirely distinguishable from the sentencing structure at issue in Alleyne and 42 Pa.C.S.A. § 9718.2 is not unconstitutional. This Court did not err in sentencing Defendant to a mandatory minimum sentence of 25 years based on his prior conviction of a sexual offense.

By the Court,

M. L. Ebert, Jr.,                                    J.

District Attorney's Office

Arla Waller, Esquire
Attorney for Defendant

APR 1 8 2014
Copies delivered on _____

12

COMMONWEALTH

    v.

ELMER GREEN
OTN: T 123942-0

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: CP-21-CR-0346-2012
: CHARGES: (1) INVOLUNTARY DEVIATE
:                 SEXUAL INTERCOURSE
:         (2) INDECENT ASSAULT
:         (3) TERRORISTIC THREATS
:         (4) INDECENT ASSAULT
:
: AFFIANT:    TPR. KENNETH TALLMAN
:

## IN RE: MOTION TO SUPPRESS

## ORDER

AND NOW, this 3rd day of May, 2013, upon consideration of Defendant's

Omnibus Pre-Trial Motion, and following a suppression hearing held April 4, 2013,

Defendant's motion is DENIED.

BY THE COURT,

Kevin A. Hess, P.J.

Emily Provencher, Esquire
Assistant District Attorney

Arla Waller, Esquire
Deputy Public Defender

:rlm

Copies delivered on   MAY 0 6 2013

COMMONWEALTH

v.

ELMER GREEN
OTN: T 123942-0

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: CP-21-CR-0346-2012
: CHARGES: (1) INVOLUNTARY DEVIATE
:                    SEXUAL INTERCOURSE
:              (2) INDECENT ASSAULT
:              (3) TERRORISTIC THREATS
:              (4) INDECENT ASSAULT
:
: AFFIANT:     TPR. KENNETH TALLMAN
:

## IN RE: MOTION TO SUPPRESS

### OPINION and ORDER

For consideration at this time is Defendant's Omnibus Pretrial Motion. (Defendant's Omnibus Pretrial Motion, filed Aug. 17, 2012). Subsequent to being interviewed by the Pennsylvania State Police, Elmer Charles Green (hereinafter, "Defendant") was charged with the above-captioned offenses. Defendant has filed the instant motion asserting that he was subject to a custodial interrogation without being informed of his *Miranda* rights and that he made inculpatory statements as a result of the interrogation. Therefore, he contends that his rights under the 5th Amendment to the United States Constitution and under Article 1, Section 9 of the Pennsylvania Constitution were violated and that all evidence obtained as a result of the alleged violation should be suppressed. For the reasons that follow, Defendant's Motion will be denied.

A suppression hearing on Defendant's Motion was held on April 4, 2013. The testimony established the following:

The Defendant's name had surfaced in a report of a sexual assault that Corporal Kenneth Tallman was investigating. (Notes of Testimony, 3-4, In Re: Transcript of Proceedings Omnibus Pretrial Motion, Apr 4, 2013 (hereinafter "N.T. __")). This sexual assault was alleged to have occurred several years before it was reported and investigated. (N.T. 13-14). Corporal Tallman went to the Defendant's residence with Trooper Ben Wilson. (N.T. 4). The officers were in plain clothes. (N.T. 12). When Corporal Tallman and Trooper Wilson knocked on the door, two males answered the door and then brought the Defendant to the door. (N.T. 4). Immediately, the Defendant asked the officers if they were there because of his Megan's Law registration. (N.T. 4). The Defendant then told the officers that he had just registered. (N.T. 4). When the officers notified the Defendant that they were not there because of the registration, the Defendant stepped out onto the porch. (N.T. 5). Corporal Tallman testified that it was a cold day and that he did not think it would be suitable to interview the Defendant about the sensitive topic of a sexual assault in the home since there were multiple people living there. (N.T. 5-6). As a result, the officers asked the Defendant if he would speak to them in their car, an unmarked police car that did not contain a cage. (N.T. 5-6).

Initially, the police car was parked in front of the Defendant's residence. (N.T. 8). The Defendant sat in the front passenger seat, Corporal Tallman sat in the driver's seat, and Trooper Wilson sat in the back. (N.T. 6). The front passenger seat door was unlocked, and, in any event, if locked, pulling on the handle would unlock it. (N.T. 6). The Defendant got into the car under his own control and he was not frisked or handcuffed before doing so. (N.T. 6-7). Corporal Tallman told the Defendant that he was not under arrest and that the officers just wanted a few minutes of his time.

2

Around that time, the Defendant's sister approached and wanted to know what was going on. (N.T. 8). The Defendant's sister also stated that the Defendant already completed his Megan's Law registration. (N.T. 8). Trooper Wilson informed the Defendant's sister that they were not there in relation to the Megan's Law registration, that the Defendant was not under arrest, and that the Defendant would be returning soon. (N.T. 8). Corporal Tallman drove the car halfway up the block to avoid any further interference from the Defendant's sister. (N.T. 8-9).

After parking the car, Corporal Tallman began to record his interview with the Defendant. Corporal Tallman testified that it was not unusual for him to record an interview and that he records approximately 90% of the interviews that he conducts. (N.T. 13). The recording of the interview was played at the suppression hearing. (N.T. 8-9). In conjunction with playing the interview, Corporal Tallman testified that the Defendant was coherent during the interview and that he understood the questions, as demonstrated by the Defendant being able to recall details about the night that was the subject of the interview. (N.T. 10-11). The Defendant was not arrested that day, the Defendant was returned home, and the entire encounter lasted approximately twenty minutes. (N.T. 7-8, 11).

The Defendant's counsel presented testimony of psychologist, Dr. Wayne Schmoyer. (N.T. 16). Dr. Schmoyer administered intelligence quotient (hereinafter "IQ") and adaptive behavior tests to the Defendant. In doing so, Dr. Schmoyer was with the Defendant for approximately two hours. (N.T. 17, 21-22). Though the Defendant was 48 years old at the time Dr. Schmoyer tested him, Dr. Schmoyer testified that the Defendant's performance was comparable to a six-year-old in terms of social

communication. (N.T. 19). Furthermore, Dr. Schmoyer testified that the full scale IQ score of the Defendant was 65 and at the level of mental retardation. (N.T. 19). Dr. Schmoyer testified that the Defendant was coherent during the questioning, understood the instructions for the various tests, and that he was not confused. (N.T. 22-23).

The Defendant then took the stand and testified that he remembered speaking with the officers. (N.T. 24). The Defendant stated that the officers told him that he was free to leave and that he was not under arrest. (N.T. 24). However, the Defendant further testified that he did not actually feel like he could leave. (N.T. 24). On cross-examination, the Defendant then went on to restate that he was told that he was not under arrest, that he was free to leave, that he was not arrested, and that the officers returned him home. (N.T. 25-26).

Defendant has been charged by way of a Criminal Information with the following: at Count I: Involuntary Deviate Sexual Intercourse, a violation of 18 Pa.C.S.A. Sec. 3123(a)(1); at Count II: Indecent Assault, a violation of 18 Pa.C.S.A. Sec. 3126(a)(2); at Count III: Terroristic Threats, a violation of 18 Pa.C.S.A. Sec. 2706(a)(1); and at Count IV: Indecent Assault, a violation of 18 Pa.C.S.A. Sec. 3126(a)(1).

Defendant has filed the instant suppression motion asserting that he did not feel as if he was free to leave when being interviewed in the police car, he was not informed of his constitutional, *Miranda*, rights prior to the interview, that the he made inculpatory statements, and that those statements violated the Defendant's rights under the 5th Ammendment to the United States Constitution and under Article 1, Section 9 of the Pennsylvania Constitution. We disagree.

4

Initially, we note the existence of the well-established burden placed upon the Commonwealth in suppression matters to establish, by a preponderance of the evidence, that the challenged evidence is admissible. *Commonwealth v. Joseph*, 2011 Pa. Super. 273, 34 A.3d 855, 860 (citing *Commonwealth v. Simmons*, 2011 Pa. Super. 43, 17 A.3d 399, 402). *Miranda* warnings are required only when a suspect is subjected to custodial interrogation. *Commonwealth. v. McAliley*, 2007 Pa. Super. 55, 919 A.2d 272, 278. It is well established that, "a person is in custody for *Miranda* purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, 42. A.3d 1017, 1028 (Pa. 2012) (citations omitted). The standard in determining whether an encounter with the police is custodial is an objective one, with due consideration given to the reasonable impression of the person interrogated, rather than the subjective view of the troopers or the person being seized, and must be determined with reference to the totality of the circumstances. *Commonwealth v. Pakacki*, 587 Pa. 511, 519, 901 A.2d 983, 987 (2006).

In *Commonwealth v. Housman*, the defendant, under his own free will, entered the front seat of a police car, which was unlocked and did not contain a cage. (604 Pa. 596, 625-26, 986 A.2d 822, 839 (2009). The defendant was then interviewed for 15 to 20 minutes before leaving the car and returning home. *Id.* Under those circumstances, the Pennsylvania Supreme Court determined that a reasonable person would not feel that he was under arrest; thus, *Miranda* warnings were not required. *Id.*

Here, from the onset, Corporal Tallman and Trooper Wilson told the Defendant he was not under arrest and that he was free to leave. In the presence of the Defendant,

5

the officers also informed the Defendant's sister that the Defendant was not under arrest. The interview was conducted in the police car so that the alleged sexual assault would not be discussed in presence of the multiple people that were present at the Defendant's residence. As in *Housman*, the Defendant entered the front seat of the police car under his own free will, the car did not contain a cage, and the car was unlocked during the interview. In both *Housman* and in this case, the police interaction lasted approximately 20 minutes before the Defendant returned home. In this instance, the police car was parked less than a block from the Defendant's residence when he was being interviewed. For these reasons, we find that a reasonable person in the Defendant's position would not feel that he was under arrest.

The Defendant suggests that his below average intelligence overrides the surrounding circumstances including the fact that he was repeatedly told that he was free to leave. Mental deficiencies, however, do not make one per se unable to waive constitutional rights. *Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 805 (1976). The Defendant had a clear recollection of being instructed that he was not under arrest and that he was free to leave. Furthermore, the testimony reflects that the Defendant was coherent during the interview and that he understood what was going on during the interview. Though the Defendant has below average mental ability, he demonstrated an ability, as verified by Dr. Schmoyer, to comprehend instructions. We find no reason to believe that the Defendant would not also be able to understand the police instruction that he was not under arrest and free to leave.

6

Accordingly, we find that the Defendant was not in custody and therefore was not entitled to being informed of his *Miranda* rights. As a result, the statements obtained by the officers will not be suppressed.

## ORDER

AND NOW, this 3rd day of May, 2013, upon consideration of Defendant's Omnibus Pre-Trial Motion, and following a suppression hearing held April 4, 2013, Defendant's motion is DENIED.

BY THE COURT,

Kevin A. Hess, P.J.

Emily Provencher, Esquire
Assistant District Attorney

Arla Waller, Esquire
Deputy Public Defender

:rlm

7