**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Austin LEWIS, II, Appellant.**

**Commonwealth of Pennsylvania, Appellant,**

v.

**Austin Lewis, II, Appellee.**

Superior Court of Pennsylvania.

Argued May 24, 2005.
Filed Oct. 7, 2005.

Lara C.G. Hoffert and Jay M. Nigrini, Reading, for Lewis.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Austin Lewis, II, asks us to determine whether the trial court erred when it allowed the Commonwealth to question its witness on redirect, over the objection of counsel, concerning the prior bad acts of individuals who had been in-

volved in drug transactions with Appellant's co-defendant. We hold that Appellant "opened the door" to this testimony by cross-examining the detective about her prior drug-related encounters with the co-defendant and his associates.

¶ 2 The Commonwealth's cross-appeal asks us to determine whether the trial court erred when it failed to sentence Appellant to the mandatory minimum sentence of two years' incarceration pursuant to the drug-free school zone provision found in Section 6317 of the Pennsylvania Crimes Code. We hold the mandatory drug free school zone enhancement provision of Section 6317 applies in this case, where Appellant sold marijuana within 1000 feet of St. John's Lutheran Church ("St.John's") pre-school. Accordingly, we affirm Appellant's conviction but vacate the judgment of sentence and remand this case to the sentencing court to impose the mandatory minimum sentence provided by Section 6317.

¶ 3 The relevant facts and procedural history of this appeal and cross-appeal are as follows. On Wednesday, March 27, 2002, Detective Melissa Hadfield of the Berks County Detectives, working in an undercover capacity, contacted Frank Lopez and arranged to purchase three ounces of marijuana from him for $600.00. Lopez directed Detective Hadfield to meet him in the parking lot of St. John's in Boyertown, Berks County, at around 4:00 p.m. At the prearranged time, Detective Hadfield arrived at the church parking lot and parked her car on the passenger side of Lopez's vehicle. Appellant was seated in the passenger seat. After a brief conversation, during which Detective Hadfield confirmed the existence of the marijuana, she sig-

naled the arrest team to move in and arrest Lopez and Appellant. The officers confiscated sixty-five grams of marijuana.

¶ 4 Trial occurred on May 6, 2004. On cross-examination, Appellant's counsel questioned Detective Hadfield about her previous drug-related encounters with Lopez. Detective Hadfield testified about two previous transactions involving Lopez, but Appellant was not present at either of those transactions. On redirect examination, over the objection of Appellant's counsel, the Commonwealth questioned Detective Hadfield at length concerning her previous encounters with Lopez. Detective Hadfield stated Lopez "was always with someone" at the prior transactions. (N.T. Trial, 5/6/04, at 76). Detective Hadfield also testified regarding the degree of involvement of the individuals who had accompanied Lopez to his other drug transactions.

¶ 5 On May 7, 2004, the jury found Appellant guilty of possession of a controlled substance with intent to deliver ("PWID"),[1] possession of a controlled substance,[2] and two counts of criminal conspiracy.[3] The court conducted a sentencing hearing on September 7, 2004. At that hearing, Sister Millicent Drake, St. John's Director of Christian Education, testified that St. John's runs a pre-school, a Sunday church school, and a vacation church school on the property. Sister Drake also testified the church conducts daily classes. The classes are for two, three, and four-year olds, as well as a transitional kindergarten for five year-olds. Additionally, Sister Drake stated: "We are not a daycare. We are definitely a pre-school preparing children for kindergarten." (N.T. Sentencing, 9/07/04, at 7).[4]

---

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

3. 18 Pa.C.S.A. § 903(a)(1).

4. The pre-school is open five days per week. (N.T. Sentencing, 9/7/04, at 8). However, not all age groups attend pre-school each day.

¶ 6 At the conclusion of the sentencing hearing, the court sentenced Appellant to one to twenty-three months' incarceration followed by two years' probation. Appellant filed a motion to modify sentence on September 14, 2004, which the court denied by order entered September 16, 2004. On October 7, 2004, Appellant timely filed his notice of appeal. The Commonwealth filed notice of a cross-appeal on October 14, 2004.

¶ 7 At docket No. 1576 MDA 2004, Appellant raises the following issue for our review:

> WHETHER THE COURT ERRED IN PERMITTING DETECTIVE HADFIELD TO TESTIFY, OVER THE OBJECTION OF COUNSEL, TO THE SPECIFIC ROLES PLAYED BY KYLE CONRAD AND SHAWN QUINTER IN PRIOR MARIJUANA DELIVERIES THAT INVOLVED CODEFENDANT FRANK LOPEZ BUT NOT APPELLANT, THEREBY UNFAIRLY [IMPLYING] THAT ALL INDIVIDUALS ASSOCIATED WITH FRANK LOPEZ ARE ACTIVELY INVOLVED IN DELIVERING MARIJUANA?

(Appellant's Brief at 4).

¶ 8 The admission of evidence is within the sound discretion of the trial court. *Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123 (1995). Our standard of review for such a determination is whether the trial court abused its discretion. *Commonwealth v. Albrecht,* 554 Pa. 31, 52, 720 A.2d 693, 704 (1998).

¶ 9 Appellant argues Detective Hadfield's testimony on redirect, concerning the involvement of other persons in previous drug transactions with Lopez, should have been excluded because the testimony caused the jury to base its decision on something other than the legal propositions relevant to the case. Appellant contends Pennsylvania's prohibition on evidence relating to prior bad acts extends to evidence of others' bad acts offered to show a defendant acted in conformity with the criminal character of those others as demonstrated by their prior bad acts. Appellant supports this assertion by stating that the basic principle of Pa.R.E. 404 is consistent with Federal Rule of Evidence 404.[5] Appellant claims the Commonwealth had no reason to question Detective Hadfield regarding the previous transactions with Lopez other than to show Appellant acted in conformity with those who had accompanied Lopez at the previous transactions. Appellant concludes the trial court erred when it admitted Detective Hadfield's testimony, and this Court must reverse the trial court and discharge him on all counts. We disagree.

¶ 10 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). However, this Court has stated:

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door'...by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the

*(Id.)* The children learn letters and begin to learn to read while in the program. *(Id.)*

**5.** Appellant refers to Federal Rule of Evidence 404 for the proposition: "Conduct of a third

party offered to prove the character of the accused is barred as evidence of defendant's conduct." (Appellant's Brief at 12).

Commonwealth can probe further into the objectionable area.

*Commonwealth v. Stakley*, 243 Pa.Super. 426, 365 A.2d 1298, 1299–1300 (1976). *See also Commonwealth v. Patosky*, 440 Pa.Super. 535, 656 A.2d 499, 504 (1995), *appeal denied*, 542 Pa. 664, 668 A.2d 1128 (1995) (holding when defendant delves into what would have been objectionable testimony on Commonwealth's part, Commonwealth can probe into objectionable area); *Commonwealth v. Bey*, 294 Pa.Super. 229, 439 A.2d 1175, 1178 (1982) (holding where defendant opens door to what otherwise might be objectionable testimony, Commonwealth may probe further to determine veracity of statement).

¶ 11 Instantly, defense counsel extensively cross-examined Detective Hadfield about her previous drug-related encounters with Lopez. (N.T. Trial, 5/06/04, at 50–52). On redirect examination, the Commonwealth continued to question Detective Hadfield about her prior encounters with Lopez. Defense counsel objected. However, defense counsel's questions on cross-examination, regarding Detective Hadfield's previous drug transactions with Lopez, opened the door for the Commonwealth to probe this potentially objectionable area. *See Patosky, supra; Bey, supra; Stakley, supra.* Therefore, the trial court properly permitted the Commonwealth to question Detective Hadfield about her prior drug-related interactions with Lopez. *See Albrecht, supra; Noll, supra.* Accordingly, this issue does not merit the relief Appellant has requested.

¶ 12 We now turn to the Commonwealth's cross-appeal. At docket No. 1600 MDA 2004, the Commonwealth raises the following issue for our review:

DID THE TRIAL COURT ERR BY FAILING TO IMPOSE THE APPLI-CABLE MANDATORY MINIMUM SENTENCE?

(Commonwealth's Brief at 4).

¶ 13 Challenges to a court's application of a mandatory sentencing provision implicate the legality of the sentence. *Commonwealth v. Drummond*, 775 A.2d 849, 854 (Pa.Super.2001) (*en banc*), *appeal denied*, 567 Pa. 756, 790 A.2d 1013 (2001). Issues relating to the legality of a sentence are questions of law. *Commonwealth v. Williams*, 871 A.2d 254, 262 (Pa.Super.2005).

> [T]herefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary. Additionally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law.

*Id.*

¶ 14 The Commonwealth argues the trial court should have considered St John's a "school" for the purposes of the Section 6317 enhancement, because St. John's operates a pre-school on the premises. The Commonwealth asserts the rules of statutory construction require courts to look to the plain and ordinary meaning of the language of the statute. The Commonwealth avers the definition of "school" is "an institution for the teaching or instruction of children or people under college age," and St. John's pre-school fits that definition. The Commonwealth also argues that, while Section 6317 formerly applied only to elementary and secondary schools, the legislature subsequently amended the language of the statute in 1997 to include all public, private, and parochial schools and colleges and universities, playgrounds, recreation centers, and school buses. The Commonwealth claims the legislature's change in the statutory language indicates its intent to broaden

the scope of the statute to protect children, regardless of their age, from the evils associated with drug activity. The Commonwealth concludes the trial court erred as a matter of law by refusing to impose the mandatory minimum sentence under the drug-free school zone enhancement provision. We agree.

¶ 15 Section 6317 provides, in relevant part:

### § 6317. Drug-free school zones

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30)]) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years. If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

18 Pa.C.S.A. § 6317(a)(1), (2) (effective August 25, 1997).

¶ 16 This Court has previously considered the rules of statutory construction when analyzing the legislative intent in enacting Section 6317:

In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act. In determining the meaning of a statute, we are obliged to consider the intent of the legislature and give effect to that intention. Courts may disregard the statutory construction rules only when the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly. The General Assembly, in clarifying the proper approach to be used in the determination of legislative intent, stipulated that:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

We are to give the words of a statute their plain and ordinary meaning. We are required to construe words of a statute...according to their common and accepted usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. Moreover, the Pennsylvania Supreme Court held tha[t] when interpreting a statute, presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect....

*Drummond, supra* at 855–56 (quoting *Commonwealth v. Campbell,* 758 A.2d 1231, 1233–34 (Pa.Super.2000) (citations and quotation marks omitted)).

¶ 17 Further, this Court has stated:

Prior to the enactment of [S]ection 6317, "Youth/School Enhancement" was the title of the previously controlling enhancement provision, which only applied to areas "within 1000 feet of a public or private elementary or secondary school." It is our interpretation that the General Assembly regarded this statute as insufficient and, therefore, enacted 18 Pa. C.S.A. § 6317 to rectify those insufficiencies. By enacting [S]ection 6317 in place of its predecessor, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or...semiprivate apartment complexes.... It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of [S]ection 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children **"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."** Furthermore, it protects our children on their way to and from school on their school bus. Finally, it protects our children in the places where they routinely play. The General Assembly did not choose to limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas within 250 feet of the real property on which is located a recreation center or playground.

*Drummond, supra* at 856–57 (quoting *Campbell, supra* at 1236–37 (citations and quotation marks omitted) (emphasis in original)).

¶ 18 Instantly, the Commonwealth charged Appellant with PWID, possession of a controlled substance, and two counts of criminal conspiracy following an undercover drug buy which occurred in the parking lot of St. John's on a Wednesday afternoon. St. John's conducts a preschool, as well as other religious education classes, on its property. The court sen-

tenced Appellant to one to twenty-three months' incarceration followed by two years' probation, but did not impose the mandatory minimum sentence set forth in Section 6317. The court stated, "I believe that the intent of the legislature with regard to [the sentence enhancements was] with regard to elementary and secondary schools." (Trial Court Opinion, dated December 14, 2004, at 3). We cannot agree the legislature intended to limit the application of the statute in that manner. Rather, in enacting and re-enacting Section 6317, the legislature intended to protect all children from the "ravages and evils of the illegal drug trade." *See Drummond, supra.* Children between the ages of two and five years old are no less vulnerable to such dangers than children in elementary or secondary schools. *See id.*

¶ 19 Furthermore, the plain and ordinary meaning, as well as the common and accepted usage, of the word "school" includes pre-schools. The dictionary definition of school is: "An institution for the instruction of children or people under college age." American Heritage Dictionary (4th ed) (2000). A pre-school, especially one designed specifically to prepare children for elementary school, falls squarely within this definition. Therefore, we conclude the drug free zone enhancement provision of Section 6317 applies to St. John's pre-school. *See id.; Campbell, supra.*

¶ 20 Based upon the foregoing, we hold that the trial court did not err in allowing Detective Hadfield's testimony on redirect examination concerning her prior drug transactions with Appellant's co-defendant, because Appellant "opened the door" to this testimony by cross-examining Detective Hadfield about those prior transactions. We further hold the trial court erred when it refused to apply the mandatory minimum sentence under Section 6317, because Appellant sold marijuana within 1000 feet of St. John's pre-school, which falls within the scope of Section 6317. Accordingly, we affirm Appellant's conviction but vacate his judgment of sentence and remand this case to the sentencing court to apply the mandatory minimum sentence provided by Section 6317.

¶ 21 Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

¶ 22 *Judge KELLY Files a Concurring Statement.

CONCURRING STATEMENT BY KELLY, J.:

¶ 1 I join in all aspects of the majority's thoughtful and thorough opinion. I write separately to note my interpretation of the legislature's intent in passing Section 6317. As the learned majority notes, Section 6317 was revised from "within 1000 feet of a public or private elementary or secondary school" to "within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university." (Majority Opinion at 57) (quoting *Commonwealth v. Drummond*, 775 A.2d 849, 856 (Pa.Super.2001) (*en banc*), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001)). Because the trial court specifically stated it believed the legislature intended the statute to apply only to elementary and secondary schools, I would emphasize the legislature specifically removed the "elementary and secondary school" requirement and instead inserted the broader "public, private or parochial school" language. *Compare* 204 Pa.Code § 303.9(b)(1) (1996), *with* 18 Pa.C.S.A. § 6317(a). Furthermore, the legislature clearly intended to expand the scope of the statute by adding colleges, universities, and playgrounds to the statute.

¶ 2 I also note that even under the older "elementary or secondary school" re-

quirement, pre-schools would qualify. In Section 5311 of the Education Code, our legislature specifically states: "The term 'elementary school' means a day or residential school which provides **preschool**, kindergarten or elementary education in the Commonwealth, including both public and nonpublic schools." 24 P.S. § 5311 (emphasis added). Accordingly, I join my learned colleagues in determining St. John's pre-school falls within the scope of Section 6317.[6]

**6.** However, I note my concern about an issue regarding this statute, as raised previously by my esteemed colleague, President Judge Del Sole. In *Commonwealth v. Hinds*, 775 A.2d 859 (Pa.Super.2001), *appeal denied*, 567 Pa. 757, 790 A.2d 1014 (2001), Judge Del Sole noted in dissent: "[I]n many places, it is not uncommon for institutions of learning to lease commercial space to accommodate students. A literal reading of the statute would extend the 'zone' to 1000 feet around a commercial building even if its use as a school is not generally known." *Id.* at 868 (Del Sole, J., dissenting). I joined the majority in *Hinds* because the appellant stipulated his apartment was within 1,000 feet of a school, and the issue regarding notice of nearby schools was not raised by the appellant. *See id.* at 861. Similarly, I note the issue of notice was not raised in the instant case. Nonetheless, I agree with the theory behind Judge Del Sole's dissent, and I emphasize that I join in vacating the judgment of sentence because the only issue before us is whether pre-schools are within the scope of Section 6317.