J-S53005-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| Appellee | : |
| | : |
| v. | : |
| | : |
| AVON CONSTANT QUIERO, JR., AKA | : |
| AVON CONSTANTIN QUIERO, JR., | : |
| | : |
| Appellant | : No. 352 MDA 2015 |

Appeal from the Order entered January 13, 2015,
Court of Common Pleas, Lebanon County,
Criminal Division at No. CP-38-CR-0001570-2012

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 06, 2015**

Avon Constant Quiero, Jr. ("Quiero") appeals from the order of court denying his petition seeking post-conviction DNA testing.  We affirm.

The PCRA court summarized the facts underlying this appeal as follows:

> On October 2, 2012, the Wachovia Bank at 801 Cumberland Street, Lebanon City, Lebanon County, Pennsylvania was robbed. The Robber handed a note written on a [S]ocial [S]ecurity card to Irma Calero-Haser (herein "Haser"), a teller. The note said that he had a gun and demanded that she empty her drawer.  Haser followed the instructions and gave the robber the money.  Haser testified that she saw metal on him and that she believed that he did have a gun. The robber put the money in his pocket and exited the Bank through the front, side door.
>
> Haser told her co- worker, Danielle Peachy (herein "Peachy"), what had happened. Peachy was working the drive through window and saw the

robber through the drive through window. He was about four feet away from the window. As the supervisor on duty, Peachy shut down the bank and notified police. When the police arrived, both women gave a description of the robber. Haser described the robber as male, tall, Hispanic, wore a hat, and husky /chubby. At trial Haser testified that she is five foot, two inches tall, so any one taller than her is "tall." Peachy described the robber as a husky Hispanic male wearing a hat.

Later that day, Peachy was shown a photo array by Sargent [sic] Jon Hess (herein "Sgt. Hess") of the Lebanon City Police. Peachy identified [Quiero] as the man who had committed the robbery. Haser was not able to identify anyone from the photo array on that day. Peachy gave police access to the surveillance video.

Trial Court Opinion, 3/25/15, at 2-3.

Quiero was subsequently arrested in connection with this robbery. After numerous continuances, Quiero's jury trial occurred on May 8, 2014. Quiero represented himself at trial and a court-appointed attorney, Elizabeth Judd, Esquire, acted as stand-by counsel. He was convicted of two counts of robbery and sentenced to six to twenty years of incarceration. Quiero filed a post-sentence motion, which the trial court denied after a hearing. On November 17, 2014, Quiero filed a direct appeal to this Court. On January 12, 2015, Quiero filed a petition for post-conviction DNA testing. The PCRA court denied this petition the following day, and this appeal followed.

Quiero asks, "[d]id the [trial] court's refusal to grant [his] request for [p]ost-[c]onviction DNA testing violate [his] rights to due process?" Quiero's Brief at 1. Requests for post-conviction DNA testing are governed by 42 Pa.C.S.A. § 9543.1.

> Generally, "the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." ***Commonwealth v. Lewis***, 885 A.2d 51, 55 (Pa. Super. 2005), *appeal denied*, [] 906 A.2d 540 ([Pa.] 2006). When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. ***Commonwealth v. Brooks***, 875 A.2d 1141, 1147–48 (Pa. Super. 2005). We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm. ***See Commonwealth v. Heilman***, 867 A.2d 542 (Pa. Super. 2005), *appeal denied*, [] 876 A.2d 393 ([Pa.] 2005).

***Commonwealth v. Williams***, 35 A.3d 44, 47 (Pa. Super. 2011).

Section 9543.1 provides, in relevant part, as follows:

> **(a) Motion.--**
>
> (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
>
> (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date

of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\*\*\*

**(c)    Requirements.--**In    any    motion    under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

(ii) in a capital case:

     (A) assert the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) (relating to sentencing procedure for murder of the first degree) if the applicant's exoneration of the

conduct would result in vacating a sentence of death; or

  (B) assert that the outcome of the DNA testing would establish a mitigating circumstance under section 9711(e)(7) if that mitigating circumstance was presented to the sentencing judge or jury and facts as to that issue were in dispute at the sentencing hearing.

(3) present a prima facie case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

  (A) the applicant's actual innocence of the offense for which the applicant was convicted;

  (B) in a capital case, the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) if the applicant's exoneration of the conduct would result in vacating a sentence of death; or

  (C) in a capital case, a mitigating circumstance under section 9711(e)(7) under the circumstances set forth in subsection (c)(1)(iv).

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

(ii) in a capital case, would establish the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) if the applicant's exoneration of the conduct would result in vacating a sentence of death; or

(iii) in a capital case, would establish a mitigating circumstance under section 9711(e)(7) under the circumstances set forth in subsection (c)(1)(iv).

42 Pa.C.S.A. § 9543.1(a),(c),(d). Section 9543.1 contains "several threshold requirements to obtain DNA testing[.]" **Williams**, 35 A.3d at 49. These are:

(1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence

- 6 -

was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency.

*Id.*    This Court has further explained that when enacting these requirements,

the legislature delineated a clear standard— and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a prima facie case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a prima facie case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence.** We find no ambiguity in the

> standard established by the legislature with the words of this statute.
>
> > **Commonwealth v. Smith**, 889 A.2d 582, 584 (Pa. Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006) (emphasis added). The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. **Id.** at 585. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a prima facie case that the DNA results, if exculpatory, would establish actual innocence. **Id.** at 586.

**Id.** at 49-50.

Returning to the present appeal, the PCRA court denied Quiero's request because he did not meet the requirements of § 9543.1(a) or (c). PCRA Court Opinion, 3/25/15, at 9-10. We agree. The DNA evidence Quiero seeks to have tested is on the social security card handed to Haser during the robbery, and he acknowledges that the trial court provided funds for DNA testing of this item, due to his indigent status, during trial. Quiero's Petition for Post-Conviction DNA Testing, 2/17/15, at 1. He cannot, therefore, establish that he was denied funds for this testing, as is required by § 9543.1(a).[1]

---

[1] As noted by the PCRA court, the Social Security card was, in fact, tested for DNA by the Commonwealth, and it revealed DNA consistent with Quiero's DNA. After much searching, Quiero's counsel found an expert to review the DNA results, and that expert also concluded that the DNA matched Quiero.

The PCRA court also found that Quiero failed to establish a prima facie case that that the requested DNA testing would establish his actual innocence of the crime. We agree. In his petition, Quiero proclaims his innocence, but does not explain how further DNA testing would establish that his is actually innocent of the crimes of which he was convicted. ***See id.*** at 2.[2]

Having found that the PCRA court did not err in its conclusion that Quiero failed to meet the requirements of § 9543.1(a) and (c), we find no error in its denial of his petition for post-conviction DNA testing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2015

---

[2] Although not germane to our decision, we note that the PCRA court conducted the review of the record of Quiero's trial, as it was required to pursuant to § 9543.1(d)(2), and determined that there is no reasonable probability that the requested DNA testing would produce exculpatory evidence. PCRA Court Opinion, 3/15/15, at 10.