2024 PA Super 276

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TROY SCOTT NABRIED | : | |
| | : | |
| Appellant | : | No. 1527 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001136-2022

BEFORE: PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.: **FILED: NOVEMBER 19, 2024**

Troy Scott Nabried appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County after his conviction of one count each of possession with intent to deliver a controlled substance ("PWID") and criminal use of a communication facility.[1] Nabried asserts the trial court abused its discretion in admitting certain pieces of physical evidence and testimony and in denying his request to hire an expert. Upon review, we affirm.

On June 27, 2023, the Commonwealth filed an amended information charging Nabried with the above crimes. These charges stemmed from a controlled purchase of crystal methamphetamine between a confidential informant ("CI") and Nabried that took place on March 31, 2022.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512(a), respectively.

On July 10, 2023, a two-day jury trial commenced. At trial, three witnesses testified: the two investigating officers, Peter Petrucci and Brandon Walters, and a drug identification expert, Lauren Force. Also, an audio/video recording of the controlled buy was admitted into evidence.

On the day of the transaction, the officers were with the CI at her home. The CI placed multiple calls to Nabried that went unanswered. Nabried responded with a text message informing the CI that he would come to see her in about 15 minutes. Shortly thereafter, the officers observed Nabried arrive at the CI's house in his vehicle. The officers provided the CI with $500.00. The CI requested crystal methamphetamine and "white girl," which was a reference to powder cocaine. The CI gave Nabried the $500.00 but did not initially receive the drugs. Nabried left the CI's house to retrieve the drugs. When he returned, he provided the CI with one ounce of what would later be identified as crystal methamphetamine. Nabried was not taken into custody at that time and was later arrested on April 26, 2022.

At the conclusion of trial, the jury found Nabried guilty of both counts. On October 11, 2023, the court sentenced Nabried to an aggregate term of 48 to 120 months' incarceration. This timely appeal followed. Nabried complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Nabried raises six issues for our review.

1. Whether the trial court abused its discretion in admitting Commonwealth Exhibit 1, AT&T phone records, into evidence

without being properly authenticated, and therefore the records constituted inadmissible hearsay.

2. Whether the trial court abused its discretion in allowing the Commonwealth Exhibit 2, text messages, to be admitted without being properly authenticated because no testimony was presented from the person(s) who sent or received the text messages.

3. Whether the trial court abused its discretion in finding that the defense "opened the door" which allowed the Commonwealth to introduce testimony regarding other uncharged drug transactions, when the defense's questioning was narrowly tailored to avoid "opening the door."

4. Whether the trial court abused its discretion in allowing the affiant, Officer Peter Petrucci, to testify to the contents of a clandestine video and audio recording, instead of the Confidential Informant, in violation of the Rule against Hearsay.

5. Whether the trial court abused its discretion in allowing the affiant, Officer Peter Petrucci, to testify to the contents of a clandestine video and audio recording, instead of the Confidential Informant, in violation of Mr. Nabried's right to [c]onfront [w]itnesses under the United States and Pennsylvania Constitutions.

6. Whether the trial court abused its discretion in denying Mr. Nabried's request to hire an expert witness to testify to the industry standard of Narcotics Investigations and Techniques.

Appellant's Brief, at 3-4 (suggested answers omitted).

Most of the issues raised by Nabried relate to the admissibility of physical evidence and testimony. "The admissibility or exclusion of evidence are subject to the abuse-of-discretion standard of review." **Commonwealth v. Ellis**, 313 A.3d 458, 462 (Pa. Super. 2024) (citation omitted). The party challenging the trial court's evidentiary ruling carries a heavy burden in establishing that the trial court abused its discretion. **See Commonwealth v.**

- 3 -

*DiStefano*, 265 A.3d 290, 297 (Pa. 2021). The trial court abuses its discretion only if it misapplies the law, or its exercise of judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. *See id.* at 298.

In his first issue, Nabried argues that the trial court abused its discretion in admitting cell phone records into evidence because the records were inadmissible hearsay and did not meet the business record or public record exceptions to the hearsay rule. *See* Appellant's Brief, 18-23. The Commonwealth responds that the cell phone records met the business records exception to the hearsay rule. *See* Commonwealth's Brief, at 5-11.

Hearsay is a statement: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay is inadmissible unless it falls within one of the exceptions set forth at Pennsylvania Rule of Evidence 803. *See* Pa.R.E. 802.

One such exception is the business records exception, which provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
>> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

- 4 -

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Similarly, the Uniform Business Records as Evidence Act provides, in pertinent part, that

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b).

As observed by the trial court, "cell phone records that a company keeps in the regular course of business are not excluded by the rule against hearsay and are admissible under the business records exception." Trial Court Opinion, 2/20/24, at 15 (citation omitted). To satisfy the business record exception the testifying witness need not be the custodian of the record or have personal knowledge of the facts reported in the business record. ***Commonwealth v.***

*McEnany*, 732 A.2d 1263, 1272 (Pa. Super. 1999). Instead, "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." *Id.* (citations omitted).

Here, AT&T kept the subject cell phone records in the normal course of business. Although the custodian of the records did not testify, the trustworthiness of the cell phone records was established through Officer Petrucci's knowledge of them. Specifically, the CI told Officer Petrucci what Nabried's cell phone number was and the officer secured a court order to obtain the subscriber information from AT&T for that cell phone number. *See* N.T., 7/10/24, at 45. Further, Officer Petrucci did a public record check of that phone number which revealed that Nabried was the owner. *See id.*

At trial, Officer Petrucci identified Commonwealth's Exhibit 1 as subscriber information from AT&T for the cell phone number. *See id.* at 47-48. The document was obtained through court order from AT&T. *See id.* at 48. Officer Petrucci testified that the exhibit was a fair and accurate depiction of the information that AT&T provided, and that it was the same information he had obtained during the public records check. *See id.* The court overruled defense counsel's objection because Officer Petrucci confirmed the trustworthiness of the AT&T information through his own records. *See id.* at 49.

Because the information in the record from AT&T was corroborated by Officer Petrucci's personal knowledge, which established the trustworthiness of the business record, we discern no abuse of discretion.

Next, Nabried argues that the trial court abused its discretion in allowing text messages to be admitted without proper authentication because there was no testimony presented from the sender or recipient of the text messages. **See** Appellant's Brief, at 23. The Commonwealth responds that the text messages were properly authenticated through circumstantial evidence. **See** Commonwealth's Brief, at 12-16.

"[T]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "[A]uthentication generally entails a relatively low burden of proof[.]" **Commonwealth v. Bowens**, 265 A.3d 730, 759 (Pa. Super. 2021) (*en banc*) (citation omitted). "[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." **Id.** at 760 (citation omitted). Accordingly, authentication of text messages "turns upon the depth of direct and circumstantial evidence of authorship marshaled by the proponent of the text messages." **Commonwealth v. Orr**, 255 A.3d 589, 601 (Pa. Super. 2021); **see also** Pa.R.E. 901(b)(11).

In ***Orr***, we rejected the appellant's argument that the Commonwealth failed to authenticate certain text messages by failing to demonstrate that the appellant authored the messages. ***See Orr***, 255 A.3d at 601. The circumstantial evidence demonstrated that the appellant was the author of the text messages. ***See id.*** Specifically, testimony from a witness that she bought the phone for the appellant, the phone was found among the appellant's belongings when he was apprehended, and the content of the text messages— the appellant's ongoing custody dispute with the victim—indicated that the appellant was the author of the text messages. ***See id.***

Similarly, here, Nabried's authorship of the text messages was authenticated through circumstantial evidence. The text message came from the phone number that was authenticated as Nabried's cell phone. ***See*** N.T., 7/10/23, at 50-52. The CI called Nabried's cell phone, which prompted a response from Nabried at 3:42 p.m. that he would see her in about 15 minutes. ***See id.*** at 51-53, 56. Consistent with that text message, shortly thereafter Nabried called the CI to inform her that he arrived and police observed Nabried in his vehicle outside of the CI's house. ***See id.*** at 61. This depth of circumstantial evidence demonstrated that Nabried was the author of the text messages. ***See Orr***, 255 A.3d at 601. Therefore, the trial court did not abuse its discretion in admitting the text messages.

Nabried next argues that the trial court erred in ruling that the defense "opened the door" to testimony about any uncharged drug deliveries. ***See*** Appellant's Brief, at 36. Nabried argues that defense counsel did not open the

door because his questions were narrowly tailored not to elicit an answer related to any prior conduct. **See id.** at 39. We disagree.

The trial court ruled that defense counsel "opened the door" on two occasions. First, the trial court ruled that the following exchange during defense counsel's cross-examination of Officer Petrucci "opened the door to the other undercover controlled buys that would show [the CI's] reliability." N.T., 7/10/23, at 108.

> Q. You said you never worked with this person before?
>
> A. Correct. . . .
>
> Q. Okay, so you had no way to gauge her reliability? And when I say reliable, I mean that she's going to do what she says she does and she's done it well in the past. But you have no way to gauge her reliability because you've never worked with her and she's never been an informant to your knowledge before, correct?
>
> A. She's never been an informant of mine prior to this investigation. But I worked with her for several weeks during this investigation.
>
> Q. But you had no way to gauge her reliability prior to beginning this investigation?

**Id.** at 107-108. The trial court ruled that this exchange "opened the door" to the other controlled buys to show the CI's reliability. **See id.** at 108-10.

The next exchange during Officer Petrucci's cross-examination concerned how an unanswered phone call from the CI to Nabried indicated to Nabried that the CI wanted drugs. Officer Petrucci testified that "the fact that there was a phone call to Mr. Nabried alerted him to the fact that the [CI] wanted an ounce of crystal methamphetamine[,]" and that "the phone call

placed the order for the drug." *Id.* at 131, 133. This led to the following exchange between defense counsel and Officer Petrucci:

Q. No one ever answered that phone call?

A. No.

Q. So nothing was set up with a phone call?

A. Wrong. Yes, it was. The phone call was enough for Mr. Nabried to know that she wanted to order narcotics.

Q. He never answered the phone.

A. I understand that.

Q. Then how could he know?

*Id.* at 134. The trial court ruled that this exchange "opened the door" to prior drug transactions to demonstrate how a phone call from the CI informed Nabried that the CI was seeking to buy drugs. *See id.* at 134-36.

"If [a] defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area." *Commonwealth v. Lewis*, 885 A.2d 51, 54-55 (Pa. Super. 2005) (citations omitted). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Gross*, 241 A.3d 413, 420 (Pa. Super. 2020) (citation omitted).

Here, defense counsel's questions created a false impression that the CI had never bought drugs before from Nabried and that there was no reason for Nabried to know that a phone call from the CI indicated that she wanted drugs.

This false impression was only dispelled by Officer Petrucci's testimony on redirect that the CI had previously bought drugs from Nabried and that based on these previous drug transactions Nabried knew that a phone call from the CI indicated that the CI wanted drugs. **See** N.T., 7/10/23, at 147-48. Therefore, we discern no abuse of discretion.

In his fourth issue, Nabried argues that statements made in the audio/video recording were inadmissible hearsay statements made by the CI and the trial court abused its discretion in allowing Officer Petrucci to testify about them. **See** Appellant's Brief, at 26. Specifically, Nabried contests Officer Petrucci's testimony that the CI asked to purchase crystal methamphetamine and "white girl" and his testimony that "white girl" refers to powder cocaine.[2] **See id.** at 27. The Commonwealth argues that the CI's statements were not hearsay because they were offered to provide context rather than for the truth of the matter asserted, and that Officer Petrucci's definition of "white girl" was not derived from hearsay because it was based on his training and experience. **See** Commonwealth's Br. at 19-22.

As we previously observed, hearsay is a statement: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. However, an out-of-court statement "offered for a purpose other

_____

[2] Considering Nabried was convicted of PWID for crystal methamphetamine, not cocaine, we fail to see, and Nabried does not explain, how the statements about "white girl" are relevant to this appeal.

than proving the truth of its contents, . . . is not hearsay and is not excludable under the hearsay rule." ***Commonwealth v. Dargan***, 897 A.2d 496, 500 (Pa. Super. 2006) (citation omitted). "[S]upplying context is a non-hearsay purpose." ***See Commonwealth v. Ames***, 290 A.3d 691, at 8 n.10 (Pa. Super. filed Dec. 19, 2022) (unpublished memorandum) (citing 1 McCormick On Evid. § 56 (8th ed.)).[3]

First, Officer Petrucci's testimony about the definition of "white girl" was based on his own training and experience, not on hearsay. ***See*** N.T., 710/23, at 68. Second, the trial court reasoned that the CI's statements about her intent to purchase methamphetamine and "white girl" did not violate the rule against hearsay because they were not offered to prove the truth of the matter asserted but rather were offered to put into context statements made by Nabried. ***See*** Trial Court Opinion, 2/20/24, at 5-6. We discern no abuse of discretion. The CI's statement on the recording that she was requesting to buy drugs from Nabried provided context to the interaction between the CI and Nabried. Without this context, the interaction between the CI and Nabried would be incomplete and confuse the jury. Thus, the trial court's admission of the CI's statements from the audio/video recording did not violate the rule against hearsay and was not an abuse of discretion.

Further, the admission of Officer Petrucci's testimony regarding the content of the audio/video recording of the controlled buy was not an abuse

---

[3] Non-precedential decisions filed after May 1, 2019, may be cited as persuasive authority. ***See*** Pa.R.A.P. 126(b)(2).

of discretion.[4] An officer may testify to the contents of a surveillance video if their testimony is based on their own personal observations and experience. **See Commonwealth v. Bair**, 1681 MDA 2018, at 7 (Pa. Super. filed Aug. 14, 2019) (unpublished memorandum) (holding that the trial court did not abuse its discretion in allowing a police officer's testimony regarding the contents of a recorded controlled buy where the officer was physically present at the scene and his testimony was based on his personal knowledge, training, and experience with investigating drug crimes).

In this case, the trial court reasoned that Officer Petrucci's testimony was admissible because it was based on his own observations and personal knowledge of the scene. **See** Trial Court Opinion, 2/20/24, at 4-6. We agree. Officer Petrucci observed the drug transaction in real time. **See** N.T., 7/10/23,

_____

[4] To the extent that Nabried challenges the admission of Officer Petrucci's testimony regarding the content of the audio/video recording, rather than the CI's statements therein, he has waived this issue. Issues not raised in the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Further, "[t]he rule is well settled that a party complaining on appeal of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." **Commonwealth v. Santiago-Burgos**, 314 A.3d 535, 545 (Pa. Super. 2024) (citation omitted). Accordingly, "[i]f counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal." **Commonwealth v. Lopez**, 57 A.3d 74, 82 (Pa. Super. 2012) (citations omitted). At trial, defense counsel only objected to the admission of the CI's statements in the audio/video recording but never objected to Officer's Petrucci's testimony. **See** N.T., 7/10/23, at 13-15, 63. Defense counsel's failure to object on these specific grounds resulted in waiver. However, as discussed above, even if not waived, the claim would not merit relief.

at 66. Thus, his testimony was based on his own observations of the events that occurred. Therefore, we discern no abuse of discretion.

In his next issue, Nabried asserts that allowing Officer Petrucci to testify about the CI's hearsay statements violated his right to confront the witness in violation of the Confrontation Clause of the Pennsylvania and United States constitutions. **See** Appellant's Brief, at 28. Nabried's claim warrants no relief.

A defendant's claim that he was denied his right to confront a witness under the Confrontation Clause of the United States and Pennsylvania Constitutions is a pure question of law for which our standard of review is *de novo*. **See Commonwealth v. Grush**, 295 A.3d 247, 250 (Pa. Super. 2023), *appeal denied*, 308 A.3d 770 (Pa. 2023). "The focus of the Confrontation Clause is testimonial hearsay." **Commonwealth v. Agnew**, 299 A.3d 1001, 1007 (Pa. Super. 2023) (citation omitted). Accordingly, the Confrontation Clause is not implicated by the admission of non-testimonial or non-hearsay statements. **See id.**

Testimonial statements are statements "made for the purpose of establishing or proving some fact." **Commonwealth v. Yohe**, 79 A.3d 520, 531 (Pa. 2013) (quoting **Crawford v. Washington**, 541 U.S. 36, 51 (2004)). To determine whether a statement is testimonial or nontestimonial, courts consider whether the statements were made for the primary purpose of establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." **Id.** (quoting **Davis v. Washington**, 547 U.S. 813, 822 (2006)). Further, "the relevant inquiry is not the subjective or actual purpose of the

- 14 -

individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, 562 U.S. 344, 360 (2011) (footnote omitted).

As stated above, the out of court statements of the CI on the audio/video recording were not hearsay because they were only introduced to provide context. *See Ames*, 1387-88 MDA 2021, at 8 n.10. Further, the statements were non-testimonial because they were made for the purpose of purchasing drugs, not for establishing past events relevant to later criminal prosecutions. *See Yohe*, 79 A.3d at 521. Since the statements were non-hearsay and non-testimonial the protections of the confrontation clause are not implicated. *See Agnew*, 299 A.3d at 1007. Therefore, Nabried's claim that his Confrontation Clause rights were violated is without merit.

In his final issue, Nabried argues that the trial court erred in denying his request to hire an expert in the field of narcotics investigation. *See* Appellant's Brief, at 40. He claims that this was critical to his defense to challenge the integrity of the Commonwealth's investigative methods in conducting the controlled buy. *See id.* Further, Nabried contends that the male officer's failure to "strip search" the female CI was unsatisfactory and warranted further review by an expert. *See id.* at 42-43. We disagree.

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees

that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

However, the provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion.

*Commonwealth v. Melvin*, 172 A.3d 14, 22–23 (Pa. Super. 2017) (brackets and citations omitted). "Generally, the trial court will not be found to have abused its discretion in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential witnesses." *Commonwealth v. Bell*, 706 A.2d 855, 862 (Pa. Super. 1998) (citation omitted).

"[T]he Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one. There must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." *Commonwealth v. Tighe*, 184 A.3d 560, 580 (Pa. Super. 2018), *aff'd but criticized*, 224 A.3d 1268 (Pa. 2020) (internal citations omitted). Similarly, a defendant is not entitled to public funds to hire an expert witness where the defendant "fails to identify a particularized need for such assistance related to a colorable issue presented in his defense[.]" *Commonwealth v. Howard*, 719 A.2d 233, 242 (Pa. 1998). Importantly, an expert is not essential to the defense where cross-examination of a witness at trial serves the same purpose as the expert

testimony. **See Commonwealth v. Lambert**, 270 A.3d 1153, at *9 (Pa. Super. filed Dec. 21, 2021) (unpublished memorandum).

The trial court explained it denied Nabried's request because he failed to demonstrate how the police officers' handling of the CI was relevant to the recording of the controlled buy. **See** Trial Court Opinion, 2/20/24, at 11. Furthermore, the trial court points out that defense counsel cross-examined the officers "at length" about their training and experience in handling confidential informants, so an expert's speculative testimony would not have offered more than what was accomplished with cross-examination. **See id.** (citing **Lambert**, **supra**.). We discern no abuse of discretion. Defense counsel was able to question the officers about their investigation tactics on cross-examination. Defense counsel cross-examined both officers about their handling of the CI and particularly why they did not have a female officer to conduct a more thorough strip search of the CI. **See** N.T., 7/10/23, at 110-20; N.T., 7/11/23, at 20-28. This cross-examination served the same purpose as the proposed expert witness of calling into question how the officers used the CI in their investigation. Therefore, the trial court did not abuse its discretion in denying Nabried's request to hire an expert witness.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2024