J-A26041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK ENDSLEY SPRINGER | : | |
| | : | |
| Appellant | : | No. 1262 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000401-2023

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

CONCURRING MEMORANDUM BY BECK, J.:     **FILED: January 28, 2025**

I respectfully disagree with the Majority's conclusion that the testimony regarding the weapons found during the search of Appellant's residence was properly admitted.  I agree, however, that any trial court error was harmless and concur in the decision to affirm Appellant's judgment of sentence on that basis.

I begin with Appellant's second issue—that evidence of Appellant's possession of firearms and ammunition unrelated to the crimes at issue was irrelevant and highly prejudicial.  **See** Appellant's Brief at 3.  The learned Majority concludes that although the victim described the gun used by Appellant during the crime at issue as a handgun,[1] evidence of the long guns

_____

[1] As noted by the Majority, the victim testified that the weapon used during the incident was "an old western looking" "matte black handgun" that "had a
*(Footnote Continued Next Page)*

found in his home during the search was properly admitted because the victim described being afraid Appellant would kill her if he got her into his vehicle, and these other guns "could have caused the victim's death," making them "potentially part of the crime." Maj. Mem. at 11-12.

"A weapon not 'specifically linked' to the crime is generally inadmissible." **Commonwealth v. Christine**, 125 A.3d 394, 400 (Pa. 2015). "The similar-weapon exception … permits the introduction of a weapon not 'specifically linked' to the crime if the Commonwealth 'lay[s] a foundation that would justify an inference by the finder of fact of the likelihood that the weapon **was used** in the commission of the crime.'" **Id.** at 393 n.4, 400 (emphasis added) (quoting **Commonwealth v. Lee**, 662 A.2d 645, 652 (Pa. 1995)).

Applying the "similar-weapons exception" to review Detective Swartz's testimony, I disagree with the Majority that it permitted the admission of evidence that police discovered long guns during the search of Appellant's home. As the Majority appears to tacitly acknowledge, and consistent with the framework set forth in **Christine**, the victim's testimony did not demonstrate that the weapons found during the search of Appellant's home bore sufficient similarities to the weapon used in commission of the crime against her to justify an inference that one of those weapons was likely to

_____

cylinder on it." N.T., 7/11/2023, at 150. Detective Swartz testified that police found one shotgun and two rifles, but no handguns, at Appellant's residence. N.T., 7/10/2023, at 124-25.

have been used in the commission of the crime. Unlike **Lee**, the instant case did not involve any evidence that the long guns found at Appellant's home were consistent with the gun fired at the scene of the incident; to the contrary, the victim's testimony established that they were inconsistent.

Instead, the Majority justifies the admission of evidence that Appellant possessed these dissimilar and unrelated firearms based upon the victim's fear that if she got into Appellant's vehicle, he would kill her. **See** Maj. Mem. at 11. According to the Majority, there was a possibility that, upon forcing the victim into his vehicle, Appellant could thereafter drive her to his home, where it was again possible for him to use the long guns to kill her. **Id.** at 11-12. My review of the record, however, finds no record support of a nexus between evidence of the victim's fear of being killed and Appellant's potential use of the long guns at his residence to kill her. This was neither the Commonwealth's theory of the case presented at trial nor the trial court's justification for allowing the admission of this testimony.[2] The victim testified that she was afraid Appellant "was going to take [her] away and kill [her]." N.T., 7/11/2023, at 157. More specifically, she stated, "I knew if I got in the car, people – you disappear. You're never seen again, and you end up in a field dead somewhere." **Id.** at 162.

_____

[2] To the contrary, the trial court states in its 1925(a) opinion that it admitted this evidence based solely upon its conclusion that Appellant opened the door to this evidence (which I address below). Trial Court Opinion, 12/22/2023, at 19.

In my view, there was never a foundation laid for this Court to conclude that the rifles and shotgun found in Appellant's home had any connection whatsoever to the crimes at issue, let alone a justifiable "inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." **See Christine**, 125 A.3d at 393 n.4, 400. There was no evidence that Appellant told the victim he was going to take her to his home or that it was even likely that this was part of his plan. As such, I disagree with the Majority that the Commonwealth laid a proper foundation to justify an inference by the jury that any of the long guns found at Appellant's home was the same weapon used in the commission of the crime. **See** Maj. Mem. at 11-12. Because the Commonwealth failed to introduce evidence to support an inference or establish a likelihood that any of the firearms recovered at Appellant's home were used in the commission of the crime, I would conclude that the trial court erred in admitting Detective Swartz's testimony regarding the unrelated firearms found during the execution of the search warrant. **See Christine**, 125 A.3d at 400; **cf. Lee**, 662 A.2d at 649.

Turning to the first issue raised by Appellant, I likewise depart from the Majority's agreement with the trial court's conclusion that defense counsel opened the door to this testimony, permitting the Commonwealth "to complete the story of the investigation, including whether any weapons were found in the residence." **See** Maj. Mem. at 6.

"A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence."

- 4 -

*Commonwealth v. Gross*, 241 A.3d 413, 420 (Pa. Super. 2020) (quotation marks and citation omitted). "If [a] defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area." *Commonwealth v. Lewis*, 885 A.2d 51, 54-55 (Pa. Super. 2005) (citations omitted).

As the Majority accurately recounts, defense counsel's questioning of Detective Swartz on cross-examination about the execution of the search warrant on Appellant's home was limited to a single question: whether Officer Berger was present. *See id.* at 5 (quoting N.T., 7/10/2023, at 124). Because defense counsel's question did not elicit any testimony that created a false impression concerning the presence or absence of firearms, there was no reason to allow the Commonwealth to elicit the testimony concerning the unrelated guns found during the search, which, as discussed above, I view to be objectionable. Defense counsel did not open the door to question the detective about whether firearms were recovered at Appellant's home; indeed, his questioning did not relate to the substance of the search in any respect. *See Gross*, 241 A.3d at 420. Counsel's cross-examination did not delve into testimony that would have been objectionable had it been elicited by the Commonwealth; he simply asked who was present to execute the search warrant with Detective Swartz. *See Lewis*, 885 A.2d at 54-55.

Because defense counsel did not ask any questions about the substance of the search at Appellant's home (much less what police recovered), in my

- 5 -

view, there was no basis to allow the Commonwealth to question Detective Swartz on redirect about the presence of unrelated firearms in Appellant's home. Further, for the reasons already discussed, I disagree with the Majority that "it was certainly reasonable for officers to assume that Appellant intended to return with the victim to his residence." Maj. Mem. at 6-7.

Nonetheless, I agree that the error of admitting this testimony was harmless. *See* Maj. Mem. at 7-8, 12. As the Majority correctly concludes, there was more than sufficient evidence to identify Appellant as the perpetrator and convict him of all charges, including attempted murder. *See id.* Appellant's contention that there was "little to no" evidence of his intent to kill, rendering Detective Swartz's testimony about guns found at his house unduly prejudicial is belied by the record. *See* Appellant's Brief at 12, 14-15. Even without the detective's testimony, there was ample evidence for the jury to infer Appellant's intent to kill: Appellant walked into the middle of the road and moved towards the victim while pointing a gun "right at [her]"; fired his gun at the victim, missing her by only about two feet; again fired the gun twice when she tried to fight back; and grabbed the victim, threw her down on the ground face-first, and applied pressure to her upper back such that she could not breathe. N.T., 7/11/2023, at 147-49, 156-57, 160-61. That no bullet hit the victim when he fired the gun three times or failed to suffocate her during their altercation does not mean the jury could not infer that he intended to kill her. *See Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (stating it is "within the province of the jury as fact-finder

to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, [and] believe all, none, or some of the evidence") (citation omitted); *see also Commonwealth v. Hall*, 830 A.2d 537, 543 (Pa. 2003) ("A gun is a lethal weapon; pointing it towards a person, and then discharging it, speaks volumes as to one's intention.") (citation omitted); *Commonwealth v. Predmore*, 199 A.3d 925, 932 (Pa. Super. 2018) (en banc) ("[T]he absence of the use of a deadly weapon against a vital part of a victim's body does not preclude a finding of intent to kill, it only precludes the use of the presumption.") (citation omitted).

For these reasons, I respectfully concur in the result reached by the Majority.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/28/2025